UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREGORY HARDY,

    Plaintiff,

                                        Case No. 2:05-cv-143
v.                                        HON. JANET T. NEFF

UNKNOWN CABRERA, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Gregory Hardy, an inmate at the Southern Michigan Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Dr. Cabrera, Recreation Gym Director Cady, Assistant Deputy Warden (ADW) Christian Soderman, Resident Unit Manager (RUM) M. Malette, Assistant Resident Unit Supervisor (ARUS) M. Cope, Resident Unit Officer (RUO) LaCrosse, ARUS McLaughlin, ARUS P. Harrington, ADW R. Haas, Kinross Correctional Facility (KCF) Warden Linda M. Metrish, Librarian R. Winnicki, ARUS James Gillotte, Deputy Warden John Boynton, Deputy Warden Secretary R. Hoornsta, and Parole Board Members James Quinlan and Margie McNutt.

Plaintiff alleges in his complaint that on June 30, 2003, Dr. Cabrera provided inadequate medical care by discharging plaintiff and taking plaintiff off psychotropic medications that plaintiff had taken for over 22 years.  Plaintiff alleges that defendant Cabrera threatened to transfer plaintiff to the Huron Valley Correctional Facility if plaintiff refused to "sign-off" his complaint.  Plaintiff asserts emotional injury, a violation of his Fourteenth Amendment rights, and a violation of the Eighth Amendment.

Plaintiff asserts that he was discriminated against by defendant Cady when he was denied use of the music room to rehearse gospel music vocals. Plaintiff complains that white prisoner music groups singing rock and classical rock were given preference to use the music room. Plaintiff asserts a violation of the Fourteenth Amendment.

Plaintiff alleges that he was repeatedly transferred and placed at the wrong security level. According to plaintiff, defendant Soderman failed to properly reclassify plaintiff although she knew that plaintiff was classified at the wrong security level. Plaintiff alleges that on September 30, 2004, while confined at Marquette Branch Prison (MBP), defendants Haas, Harrington and Metrish "conspired to deprived plaintiff in protected custody." Plaintiff alleges that he was transferred to KCF and taken directly to protective custody. Plaintiff alleges that his true security level is level one. Plaintiff allegedly was threatened that if he refused protective custody he would be reclassified to level three. Plaintiff complains that he never received a hearing.

Plaintiff alleges that defendants Cope and LaCrosse violated the confidentiality of his prisoner counselor file when defendant Cope made a statement to defendant LaCrosse that plaintiff needed to be placed in an asylum for the crime that he committed. Further, plaintiff asserts claims of retaliatory transfer against defendants Malette and Cope. Plaintiff also alleges that he was transferred to Ojibway Correctional Facility after defendant Soderman approved his security classification based upon a false document. Plaintiff alleges that defendant Soderman retaliated because of past complaints.

Plaintiff filed an "amendment and supplemental pleading," which added the remaining defendants to this action. Plaintiff has asserted that defendants Quinlan and McNutt interviewed plaintiff for a parole board interview based upon miscalculated points and invalid parole guidelines. Plaintiff alleges that after he was transferred to KCF, defendant Gillotte moved plaintiff

to another housing unit in retaliation because plaintiff had generated too much expedited mail. Plaintiff alleges that defendant Boynton conspired with defendants Hoornstra and Winnicki to prevent him from using the flash kite system which was designed for legal emergencies such as access to the law library.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and For Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff complains that his equal protection rights were violated when defendant Cady denied him access to the music room. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate" and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440-41. Consequently, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998), *cert. denied*, 525 U.S. 1139, 119 S. Ct. 1028 (1999) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

In the opinion of the undersigned, plaintiff has failed to show that defendant Cady violated plaintiff's equal protection rights. Defendant Cady is the Hobbycraft Director at the Parnall

Facility. At the time of the alleged events, defendant Cady was assigned to the gym to provide back-up coverage. Defendant Cady had limited input as to who could use the music room. The criteria for use of the music room involved an ability to play an instrument and playing an instrument with a group. Groups were given access to the music room on a first-come, first-serve basis. Defendant Cady indicates that when plaintiff approached him, plaintiff did not have a group. Defendant Cady also informed plaintiff that the room was fully reserved for groups who could maximize the use of instruments. Plaintiff then provided a list of group members to defendant Cady, but informed defendant Cady that they did not play instruments. Plaintiff was offered use of other areas of the gym that other vocal groups had used. Defendant Cady also suggested that plaintiff speak with the chaplain to schedule a time for gospel since this had been done in the past at the prison.

In the opinion of the undersigned, plaintiff has not shown that defendant Cady violated plaintiff's equal protection rights. Plaintiff cannot establish that he was denied use of the music room because of his race. Nor can plaintiff establish that the policy involving the use of the music room disfavored a particular racial group.

Plaintiff alleges that he was denied access to the courts when defendants delayed their responses to plaintiff's flash kites for additional library time. Plaintiff asserts that he needed additional library time to prepare his ten pending cases. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them,

and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff has failed to present an actual injury that could support a denial of access to the court's claim. Law library restrictions in general will not support an access to the courts claim. Similarly, delays in responding to flash kites cannot be the basis for an access to the courts claim without a showing of an actual injury. Moreover, it appears that plaintiff received extra time in the law library. Plaintiff asserts that he only sustained emotional injury. That is insufficient to support an access to the courts claim. In the opinion of the undersigned, plaintiff's access to the courts claim fails.

Defendants argue that plaintiff failed to assert facts which could support an Eighth Amendment claim. While this is true against the moving defendants, plaintiff has asserted an Eighth Amendment claim against Dr. Cabrera. Dr. Cabrera has not joined in this motion.

Plaintiff alleges that defendants retaliated against him by transferring him to a new prison and by disciplining him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants have shown that plaintiff was transferred to different prisons as a matter of routine or to due to issues that could be better addressed at the new facility. Defendant Haas, Assistant Deputy Warden at KCF, has indicated that after plaintiff was transferred from MBP on September 24, 2004, he was placed in long term protection because plaintiff had submitted his sixth protective custody request. Plaintiff requested a level I transfer. Based on plaintiff's extensive protection history, he was classified to long term protection for thirty days, and thereafter a level I transfer would be requested. Plaintiff transferred to level I on December 17, 2004. Plaintiff was transferred from KCF on June 8, 2004, to enable him to get his GED and because he had become a management problem. (Affidavit of Marquita Malette, exhibit F to defendants' Motion to Dismiss and For Summary Judgment.) Plaintiff had a Special Problem Offender Notice placed in his file at KCF against KCF staff. Moreover, plaintiff cannot show that adverse action was taken against him that would deter an ordinary person form engaging in grievance filing or litigation activity.

Plaintiff alleges that he was placed in segregation without a hearing violating his liberty interest. In the opinion of the undersigned this claim is without merit on the basis of *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995). In *Sandin*, the Plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a

disciplinary hearing and then sentencing him to segregation for misconduct. *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294. In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976). *Sandin*, 515 U.S. at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S. at 483-484, 115 S. Ct. at 2300 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. However, such restraints are rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301. Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, Plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989). Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any

choice concerning the facility where he will be incarcerated. *Meachum*, 427 U.S. at 223-29[1]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791. Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence." *Jones*, 155 F.3d at 812. The Sixth Circuit has determined that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process. *Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997). Because plaintiff in this case fails to allege facts constituting an "atypical and significant hardship," it is my recommendation that the court deny plaintiff's claim that he was denied procedural due process.

Plaintiff's assertion that defendant Cope's statement to defendant LaCrosse that plaintiff should be confined in an asylum and the statement allegedly made by defendant McLaughlin that plaintiff's file was a total sham, in the opinion of the undersigned, fail to implicate any constitutional rights. Claims of abusive language, or of general harassment, do not state an eighth amendment or substantive due process violation. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp.

---

[1] In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

223, 225 (W.D. Tenn., 1994); *Banks v. Klapish*, 717 F. Supp. 520 (W.D. Mich. 1989); *Gilson v. Cox*, 711 F. Supp. 354 (E.D. Mich. 1989); *Rahman v. Stephenson*, 626 F. Supp. 886, 888 (W.D. Tenn. 1986). Similarly, in the opinion of the undersigned, plaintiff's claims of conspiracy must fail.

Alternatively, defendants Haas, Metrish, LaCrosse, Harrington, Cope, Malette, Boynton, Cady, Gillotte, Hoornstra, McLaughlin and Winnicki move for qualified immunity from liability. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.* In the opinion of the undersigned, because plaintiff cannot establish that the moving defendants violated his constitutional rights, it is recommended that these defendants be granted qualified immunity from liability.

- 12 -

Accordingly, it is recommended that defendants' Motion for Summary Judgment (docket #82) be granted, dismissing defendants Haas, Metrish, LaCrosse, Harrington, Cope, Malette, Boynton, Cady, Gillotte, Hoornstra, McLaughlin and Winnicki from this action.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   October 15, 2007